IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VAIRRUN STRICKLAND,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MARKHAM, a municipal corporation, and ANTHONY MAZZIOTTA, in both his official and individual capacity,<br><br>Defendants. | Case No.<br><br><br><br><br>Plaintiff Demands Trial by Jury |

## COMPLAINT

Plaintiff VAIRRUN STRICKLAND ("Strickland"), through his undersigned counsel, complaining against Defendants, City of Markham, and Anthony Mazziotta, in both his official and individual capacities, states as follows:

1. Plaintiff brings this action to redress violations of Title VII of the Civil Rights Act for race discrimination (Count I); violations of Title VII of the Civil Rights Act for retaliation (Count II); violations of the Equal Protection Clause to the United States Constitution pursuant to 42 U.S.C. § 1983 for race discrimination (Count III), and violations of the Illinois State Officials and Employees Ethics Act, Article 15, Whistleblower Protection, 5 ILCS 430/15 (Count IV).

## Jurisdiction and Venue

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983 and 28 U.S.C. § 1343. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this judicial district under 28 U.S.C. §1391(b) and (c) because Plaintiff and all Defendants either reside in this district or have their principal place of business in this district, and all events giving rise to Plaintiff's claims occurred within this district.

## Parties

4. Plaintiff Strickland is a citizen of the United States who resides in Cook County, Illinois.

5. Plaintiff is African-American.

6. Plaintiff had been employed by the City of Markham as a Firefighter/EMT from October 29, 2007 until his termination on January 8, 2021.

7. Defendant CITY OF MARKHAM ("City" or "Markham") is a municipal body incorporated under the laws of the State of Illinois and conducting business in the State of Illinois.

8. Defendant ANTHONY MAZZIOTTA ("Mazziotta") is sued in both his official and individual capacity. Defendant Mazziotta is employed as the Fire Chief for City of Markham Fire Department.

9. Defendant Mazziotta has final policy making authority and/or is delegated with final policy making authority as the Fire Chief.

10. Defendant Mazziotta acted under color of law.

**Administrative Proceedings**

11. On July 28, 2022, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

12. On or about December 17, 2021, Plaintiff received a notice of right to sue from the EEOC on his charge.

13. Plaintiff has timely filed this complaint within 90 days of the receipt of the Notice of Right to Sue.

**Facts Upon Which All Claims Are Based**

14. On or about October 29, 2007, Plaintiff was hired by the City of Markham Fire Department as a Firefighter/EMT.

15. Plaintiff worked as a firefighter for the City of Markham for 13 years without any significant discipline or performance issues.

16. At all relevant times, Plaintiff satisfactorily performed his duties as a Firefighter with the City of Markham.

17. In or about January 2020, Plaintiff was requested to be a witness in regard to an Equal Employment Opportunity Commission investigation into accusations of discrimination and harassment by a former employer of the Fire Department.

18. On or about February 6, 2020, Plaintiff was interviewed by an EEOC investigator as to the knowledge he had relating to the Markham Fire Department, the former employee, and Fire Chief Mazziotta regarding discrimination that he had witnessed.

19. Plaintiff, the EEOC investigator, the former employee, Union lawyer Jerry Marzullo, and Union board members Robert Moore, Vance Woods, Ryan Simon, and Anthony Butera were present for the interview.

20. During the interview, Plaintiff stated that the former employee had been bullied by his Lieutenant and fellow firefighters. Plaintiff also stated that the former employee had been mistreated because he was a young African American man. Plaintiff stated that the former employee went through a hazing in his probationary period and was abused on a daily basis. The former employee was treated differently than the other probationary firefighters who were Caucasian. Plaintiff also stated that Defendant Mazziotta allowed this conduct to happen and didn't do anything to stop it.

21. Shortly thereafter, on February 10, 2020, Chief Mazziotta approached Plaintiff and stated that he had heard about the EEOC interview and that Plaintiff had called the Chief a "racist."

22. Plaintiff denied that he had called the Chief a "racist" and asked if he wanted to bring Engineer Robert Moore, who was also on the call, over to corroborate the truth.

23. Defendant Mazziotta declined and continued to explain that the former employee was not a good person and that Plaintiff shouldn't be defending him.

24. Plaintiff agreed and explained that he only discussed what he had witnessed himself at the fire station in regards to hazing, harassment, an discrimination.

25. On or about February 28, 2020, Plaintiff sent an email to Marion Williams, who works in Human Resources, stating that Plaintiff was approached by Chief Mazziotta inquiring about the EEOC interview and accusing Plaintiff of calling the Chief a "racist." Plaintiff also stated that he felt threatened by this encounter and that he was worried about retaliation.

26. In or about March 2020, Plaintiff met with Ms. Williams in regards to his concerns. During this discussion, Ms. Williams stated Plaintiff should not have gone to Human Resources with his complaints, but should have instead followed his chain of command and made his complaint to his Engineer and Lieutenant and then Chief Mazziotta and then, finally, to Human Resources. Ms. Williams then ended the meeting.

27. Shortly thereafter, on March 31, 2020, Marion Williams responded in writing to Plaintiff's complaints stating that, after interviewing all parties involved, there was no use of the word "racist" and that retaliation would not occur.

28. On or about August 27, 2020, Chief Mazziotta opened an investigation into Plaintiff's use of FMLA leave from November 25, 2019.

29. Plaintiff had used these approved FMLA days for a holistic therapy experience at a wellness center in Costa Rica.

30. His psychotherapist, Dr. Keith Renfroe, had recommended Plaintiff attend the sessions as Plaintiff was experiencing PTSD and depression from a house explosion that occurred in 2017 while on the job as a firefighter.

31. Defendant Mazziotta demanded that he, himself, review all of Plaintiff medical records and doctor's notes from Dr. Renfroe.

32. Plaintiff refused this request and stated that a third-party doctor could review the records, but Defendant Mazziotta could not review the records or notes as this was in violation of HIPAA.

33. Defendant Mazziotta declined to involve a third-party doctor and threatened to discipline Plaintiff for his refusal.

34. On October 29, 2020, Plaintiff, accompanied by Defendant Mazziotta, met with Detectives Jehiel and Francisco from the City of Markham Police Department in regards to an arson investigation centered around a former employee of the Markham Fire Department and the same former employee for which the EEOC had interviewed Plaintiff in 2020.

35. The detectives questioned Plaintiff as to when the last time he had been in contact with the former employee and whether the arson or the arson investigation had ever been the topic of conversation.

36. Plaintiff stated that he and the former employee were not friends, but merely former co-workers, and that he could not remember the last time he had spoken to the former employee.

37. Plaintiff also stated that he had not spoken to the former employee about the arson investigation.

38. Shortly thereafter, on November 4, 2020, Defendant Mazziotta personally requested that Plaintiff draft a To-From Memorandum stating whether he had any interaction with the former employee on October 19, 2020.

39. Plaintiff supplied Defendant Mazziotta with a To-From Memo stating that he had not had any interactions with the former employee on October 19, 2020.

40. On November 25, 2020, Chief Mazziotta, along with the City of Markham attorneys, interrogated Plaintiff further on his interactions with the former employee.

41. Plaintiff stated multiple times throughout the interview that he could not recall the exact date or dates of the last time he had spoken with the former employee.

42. After continually being berated with the same question over and over again, being accused of untruthfulness, lying to the police, and attempting to interfere with a police investigation, the Sheriff's Office allowed Plaintiff a break.

43. After taking a break and allowing his mind to clear, Plaintiff recalled that he had spoken to the former employee on the phone on October 20, 2020.

44. Plaintiff did not lie to the City of Markham detectives, Chief Mazziota in the To-From Memo, or during the investigation.

45. Plaintiff could not remember the last time he had spoken to the former employee and he stated as much during any and all questioning.

46. On December 1, 2020, Plaintiff used accrued PTO time to take a vacation out of the state to Mexico and Arizona.

47. On December 18, 2020, Plaintiff returned home.

48. On December 19, 2020, Plaintiff returned to work on his scheduled shift at the Fire Department.

49. The next day, on December 20, 2020, Plaintiff began to have body chills, muscle aches and sweating and went to the urgent care.

50. While at the urgent care, Plaintiff tested positive for COVID-19.

51. Prior to Plaintiff experiencing body chills and muscle aches, he did not experience any symptoms of COVID-19 or any other illness.

52. Plaintiff immediately called Lieutenant Giuseffi and stated he had woke up with body chills and muscle aches and went to urgent care and tested positive for COVID-19.

53. Plaintiff's goal was to be completely transparent. As such, he also texted everyone that he was previously on shift with and alerted them.

54. Plaintiff also called Defendant Mazziotta and told him of his positive test.

55. Defendant Mazziotta asked for the paperwork related to the positive test in order to get Plaintiff the proper time off for quarantine.

56. Defendant Mazziotta did not say anything else to Plaintiff on that phone call.

57. The City of Markham Fire Department has not issued any training regarding the COVID-19 to its Firefighters.

58. The City of Markham Fire Department did not notify its Firefighters of any protocol or policies to follow should they travel out of state.

59. The City of Markham Fire Department did not notify its Firefighters of any protocol or policies to follow should they experience symptoms of COVID-19.

60. Upon information and belief, other firefighters have traveled out of state and were not required to quarantine before returning to work.

61. For example, in 2020, Firefighter Justin Agpawa traveled multiple times to Arizona to see family and was not required to quarantine before returning to work.

62. The City of Markham Fire Department has not enforced any rules or policies regarding the safety and health of their employees relating to COVID-19 prior to Plaintiff's termination.

63. The City of Markham Fire Department did not require the wearing of masks around the fire station, even when guests or civilians were present.

64. The City of Markham Fire Department did not require the wearing of masks when they left the Fire Station for training at the Hazelcrest Fire Department.

65. The City of Markham Fire Department did not enforce any enhanced cleaning, sanitizing, or hand-washing at the fire station.

66. In fact, firefighters often cooked group meals, which at times included guests or visitors, where no gloves were worn and employees used their hands to grab finger-foods such French fries or sandwiches.

67. The City of Markham Fire Department did not practice any social distancing and, in fact, continued to train, without masks, in close proximity to each other.

68. Plaintiff and other firefighters would complain to Marion Williams, Defendant Mazziotta, and the Lieutenants about how dangerous it was to not wear masks, practice social distancing, or to put any safety measures in place to prevent COVID-19.

69. At no time was a firefighter ever told they were required to go home because of a cough or other symptom that could be related to COVID-19.

70. After the EEOC interview in February 2020, Plaintiff was continually singled out and written up for minor and ___ issues that no other firefighter was disciplined for.

71. For example, on March 27, 2020, Plaintiff was written up by Lieutenant Giuseffi for failing to have his gear on the engine at exactly 7:00AM.

72. After writing up Plaintiff, Lt Giuseffi admitted to Plaintiff that he had to be more careful because he knew that Plaintiff "was under a microscope.

73. Upon information and belief, no other firefighter had ever been written up for failing to have their gear on the engine at exactly 7:00AM.

74. Also, on April 2, 2020, Plaintiff was written up by Lt. Giuseffi for failing to press the button on the CAD system to alert dispatch that the engine as on scene at a structure fire. Plaintiff had used the radio to alert dispatch that they were on the scene but did not also press the button the CAD system.

75. Plaintiff has witnessed, on multiple occasions, other firefighters failing to press the "on scene" CAD button but had not been written up.

76. Upon information and belief, no other firefighter had been written up for failing to press the "on scene" button.

77. On January 6, 2021, Plaintiff met with Defendant Mazziotta for a Pre-Disciplinary Hearing.

78. On January 8, 2021, Plaintiff was terminated from his employment with the City of Markham Fire Department.

79. Plaintiff was terminated in retaliation for Plaintiff's involvement in EEOC interview.

80. Plaintiff was terminated because Defendants discriminated against him because of his race.

81. Plaintiff was singled out and treated differently by being written up, disciplined and made to jump through hoops that other firefighters who were not African American were not required to do.

82. Specifically, other firefighters were not disciplined for traveling out state, disciplined for reaching out to Human Resources, or required to reveal private and HIPAA protected medical documents.

83. Any alleged legitimate business-related reasons for Defendants actions were merely pretext for their discriminatory and retaliatory motives.

84. Plaintiff filed a charge of discrimination and retaliation with the EEOC as a result of Defendants' discriminatory and retaliatory practices.

## COUNT I

**(Title VII – Race Discrimination
v. Defendants Markham and Mazziotta (Official Capacity))**

85. Plaintiff restates and realleges by reference paragraphs 1 through 84 above as though fully set forth herein.

86. The actions of the City of Markham Fire Department as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff because of his

race, in violation of Title VII.

87. Defendants have engaged in a policy, pattern, and practice of discrimination based on race.

88. The discriminatory conduct and actions were performed by individuals with policy-making authority.

89. Defendants intentionally discriminated against Plaintiff based on his race by singling Plaintiff out and treating him differently than other Firefighters, opening retaliatory and sham investigations, issuing unfair discipline, and ultimately, terminating his employment.

90. Defendants treated similarly situated non-African American employees better than Plaintiff because of their race.

91. The actions of Defendants in intentionally discriminating against Plaintiff have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

- A. All wages and benefits Plaintiff would have received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

- B. Compensatory damages in an amount to be determined at trial;

- C. A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

D. A permanent injunction requiring the Defendant to adopt employment practices and policies in accord and conformity with the requirements of Title VII;

E. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

F. An award of reasonable attorneys' fees, costs, and litigation expenses; and

G. Such other relief as the Court may deem just or equitable.

## COUNT II

**(Title VII – Retaliation
v. Defendants Markham and Mazziotta (Official Capacity)))**

92. Plaintiff restates and realleges by reference paragraphs 1 through 84 above as though fully set forth herein.

93. The actions of Defendants as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of retaliating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff because of his complaints of discrimination and illegal conduct, in violation of Title VII.

94. Defendant has engaged in a policy, pattern, and practice of retaliating against employees who complain of discrimination.

95. The retaliatory conduct and actions were performed by individuals with

policy-making authority

96. Defendants intentionally retaliated against Plaintiff because of his complaints by denying him equal opportunities, including but not limited to: having his shift changed, being removed form the Acting Master Sergeant position, and being denied promotions to Master Sergeant after he complained.

97. Defendants treated similarly situated individuals better than Plaintiff because of his complaints of discrimination.

98. The actions of Defendants in retaliating against Plaintiff have caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

- A. All wages and benefits Plaintiff would have received but for the retaliation, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

- B. Compensatory damages in an amount to be determined at trial;

- C. A permanent injunction enjoining the Defendant from engaging in the retaliatory practices complained of herein;

- D. A permanent injunction requiring Defendants to adopt employment practices and policies in accord and conformity with the requirements of Title VII;

- E. The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with

the law;

F. An award of reasonable attorneys' fees, costs, and litigation expenses; and

G. Such other relief as the Court may deem just or equitable.

## COUNT III

### (§ 1983 Violation of Equal Protection
### v. All Defendants)

99. Plaintiff restates and realleges by reference paragraphs 1 through 84 above as though fully set forth herein.

100. Defendants intentionally subjected Plaintiff to unequal and discriminatory treatment that altered the terms and conditions of Plaintiff's employment.

101. The actions of Defendants against Plaintiff violate his equal protection right to be free from race discrimination under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

102. The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Plaintiff's rights as secured by 42 U.S.C. § 1983.

103. Defendant Markham is sued under 42 U.S.C. § 1983 for injunctive relief only, as the City of Markham and the Markham Fire Department do not have immunity from injunctive relief.

104. The actions of Defendants in intentionally engaging in and condoning discrimination against Plaintiff based on his race caused Plaintiff great mental anguish,

humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Plaintiff respectfully requests:

    A.    All wages and benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

    B.    Compensatory damages in an amount to be determined at trial;

    C.    A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

    D.    A permanent injunction requiring Defendants adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

    E.    The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

    F.    Punitive damages as allowed by law against Defendant Bogart;

    G.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

    H.    Such other relief as the Court may deem just or equitable.

## COUNT IV

**(Violation of the State Officials and Employees Ethics Act v. All Defendants)**

105.    Plaintiff restates and realleges by reference paragraphs 1 through 84 above as though fully set forth herein.

106. The State Officials and Employees Ethics Act ("the Act") states in relevant part:

> Protected activity. An officer, a member, a State employee, or a State agency shall not take any retaliatory action against a State employee because the State employee does any of the following:
>
> (1) Discloses or threatens to disclose to a supervisor or to a public body an activity, policy, or practice of any officer, member, State agency, or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of a law, rule, or regulation by any officer, member, State agency, or other State employee.

5 ILCS 430/15-10.

107. Plaintiff engaged in protected activity in that he disclosed to supervisors and public body an activity that he reasonably believed is a violation of law, rule, or regulation.

108. Plaintiff also engaged in protected activity by providing information to the EEOC in regards to an investigation relating a charge of discrimination.

109. Defendants, collectively and individually, violated the Act by retaliating against Plaintiff by, including but not limited to, being disciplined, opening sham and retaliatory investigations, ignoring Plaintiff and singling him out, and, ultimately, terminating his employment.

110. .

111. Plaintiffs protected activity described above was a contributing factor in

Defendants' retaliation against Plaintiff.

112. Defendants cannot prove by clear and convincing evidence that they would have taken the same retaliatory actions against Plaintiff had it not been for his protected activity.

113. As a result of Defendants' unlawful actions, Plaintiff has suffered substantial losses, including, but not limited to, lost wages and benefits, consequential damages as a result of lost income, damage to career prospects and reputation, and emotional distress, embarrassment and humiliation.

**WHEREFORE**, Plaintiff respectfully requests:

- A. All remedies necessary to make Plaintiff whole as provided for in the Act;

- B. All wages and benefits Plaintiff would have received but for the retaliation, including pre-judgment interest;

- C. Compensatory damages in an amount to be determined at trial;

- D. Two times the amount of back pay as provided for under the Act;

- E. A permanent injunction enjoining the Defendants from engaging in the retaliatory practices complained of herein;

- F. A permanent injunction requiring Defendants to adopt employment practices and policies in accord and conformity with the requirements of the Act;

- G. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

H. Punitive damages as allowed by law against Defendant Bogart;

I. An award of reasonable attorneys' fees, costs, and litigation expenses; and

J. Such other relief as the Court may deem just or equitable.

Respectfully Submitted,

VAIRRUN STRICKLAND

/s/*Jacob D. Exline*
_____
Plaintiff's Attorney

*Electronically filed on March 17, 2022*

Heidi Karr Sleper, Esq. (ARDC #6287421)
Jacob Exline, Esq. (ARDC #6326874)
Kurtz, Sleper & Exline, LLC
610 W Roosevelt Road, Suite A2
Phone: (630) 323-9444
Fax: (630) 604-9444
Email: hsleper@kselegal.com
Email: jexline@kselegal.com