**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VAIRRUN STRICKLAND, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:22-cv-01419 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| CITY OF MARKHAM, a municipal | ) | |
| corporation; ANTHONY MAZZIOTTA, | ) | |
| in both his official and individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

After the City of Markham Board of Fire and Police Commissioners fired Vairrun Strickland, he filed two lawsuits. The first, in the Circuit Court of Cook County, sought judicial review of the Board's decision. The second, before this Court, asserts claims of unlawful discrimination and retaliation.

According to the defendants in this action, the doctrine of res judicata bars Strickland's second suit. The Court agrees. Accordingly, and for the reasons explained below, the Court (1) treats the defendants' motions to dismiss as motions for summary judgment, and (2) grants summary judgment to the defendants.

## I. BACKGROUND

### A. Strickland's Termination

Strickland, an African American man, began working for the City of Markham Fire Department (the "Department") as a firefighter and EMT in 2007. Things went well for about 13 years: From 2007 until the end of 2019, Strickland performed his duties "satisfactorily" and "without any significant discipline or performance issues." Compl. 3 ¶¶ 15-16, ECF No. 1. But

that changed in January 2020, when Strickland was interviewed by the Equal Employment Opportunity Commission regarding "accusations of discrimination and harassment" by a former Markham firefighter. *Id.* ¶ 17. During the interview, Strickland spoke about the discrimination he witnessed against the former firefighter. He also testified that Anthony Mazziotta, the Department's chief, was aware of the relevant conduct but "didn't do anything to stop it." *Id.* at 4 ¶ 20. Four days later, Mazziotta approached Strickland and said he heard Strickland "had called [him] a racist." *Id.* ¶ 21 (quotation marks omitted).

Although Human Resources (to whom Strickland complained) disputed the use of the word "racist" and indicated that "retaliation would not occur," *id.* at 5 ¶ 27, Strickland alleges that Mazziotta and the Department began to retaliate. After the interview, that is, Strickland "was continually singled out and written up for minor . . . issues that no other firefighter was disciplined for," including "failing to have his gear on the engine" at a precise time and failing to press a certain button. *Id.* at 10-11 ¶¶ 70-71. The Department also changed Strickland's shift, removed him from the Acting Master Sergeant position, and denied him a promotion to Master Sergeant. Mazziotta, for his part, "opened an investigation into [Strickland's] use of FMLA leave" and threatened discipline when Strickland refused to comply with his directives regarding health-related documents. *Id.* at 5 ¶ 28.

In January 2021, the Department charged Strickland with "violating certain [of its] rules and regulations." Am. Findings & Decision 1-3, ECF No. 23-3.[1] Among other things, the

---

[1] The Court takes judicial notice of the decision cited here, along with other public documents accompanying the defendants' motions to dismiss, pursuant to Fed. R. Evid. 201(b)(2). Although the Court treats the defendants' motions to dismiss as summary judgment motions, *see infra* section II.A, it notes that it could "take judicial notice of [these] matters of public record [even] without converting a 12(b)(6) motion into a motion for summary judgment." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (quotation marks omitted).

Department accused Strickland of (1) lying to detectives during an arson investigation, and (2) putting the Department at risk by coming into work with COVID. According to Strickland, these accusations were "merely pretext" for discrimination and retaliation: He did not lie during the investigation, he did not know he had COVID when he came to work, and he violated no Department COVID protocols. Compl. 12 ¶ 83. Nevertheless, following hearings on the charges, the Markham Board of Fire and Police Commissioners (the "Board") terminated Strickland in April 2021.

> **B.** **Strickland's Lawsuits**

In May 2021, Strickland filed a lawsuit in the Circuit Court of Cook County challenging the Board's decision. *See* 735 Ill. Comp. Stat. 5/3-111. That suit named the Board, the City of Markham (the "City"), and Mazziotta as defendants. In October 2021, the circuit court entered an agreed order retaining jurisdiction but remanding the case to the Board; the court instructed the Board, on remand, to enter an amended decision containing additional information "as to the facts, laws, and basis for the [outcome] and discipline issued." Agreed Order 1, ECF No. 23-2. The Board did so in April 2022, again terminating Strickland, and Strickland "determined not to pursue [further] action" regarding the amended decision. Notice of Voluntary Dismissal 2 ¶ 5, ECF No. 23-4. Instead, in July 2022—after the 35-day statute of limitations for challenging the Board's decision had run, *see* 735 Ill. Comp. Stat. 5/3-103—Strickland moved to voluntarily dismiss his case pursuant to 735 Ill. Comp. Stat. 5/2-1009. The circuit court granted that motion and dismissed the action.

In March 2022, about a month before the Board issued its amended decision, Strickland filed the instant suit in the Northern District of Illinois.[2] Strickland's federal complaint asserts that the City and Mazziotta (1) discriminated against him based on race in violation of Title VII,[3] (2) retaliated against him in violation of Title VII and the Illinois State Officials and Employees Ethics Act,[4] and (3) denied him his Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. Both Mazziotta and the City now move to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## II.    DISCUSSION[5]

The defendants advance six arguments for dismissal.[6] The Court begins and ends with the first: that res judicata bars Strickland's claims.

### A.    Procedural Considerations

Before diving into matters of claim preclusion, the Court addresses a threshold question: Is it appropriate to consider res judicata at this stage? As a general matter, res judicata arguments

---

[2] The defendants initially moved to stay proceedings before this Court under the *Colorado River* doctrine. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976); *see, e.g.*, *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) ("Pursuant to *Colorado River*, a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway . . . ."). After Strickland voluntarily dismissed his state court case, the Court denied the defendants' motion as moot.

[3] 42 U.S.C. § 2000e *et seq.*

[4] 5 Ill. Comp. Stat. 430/1-1 *et seq.*; *see id.* 430/15-10.

[5] The Court has jurisdiction over Strickland's Title VII and § 1983 claims under 28 U.S.C. §§ 1331 and 1343, and over Strickland's Ethics Act claim under 28 U.S.C § 1367.

[6] Specifically, the defendants argue that Strickland's claims (1) must be dismissed on res judicata grounds, and (2) consist "entirely of vague and conclusory allegations." Mazziotta Mot. to Dismiss Mem. 9, ECF No. 23. They also argue that Strickland has failed to adequately plead (3) Mazziotta's personal involvement, or (4) the City's liability under § 1983, and that Strickland's Ethics Act claims are (5) time-barred, and (6) generally barred under the Illinois Local Governmental and Governmental Employees Tort Immunity Act. 745 Ill. Comp. Stat. 10/1-101 *et seq.*; *see id.* 10/2-201, 10/8-101.

made in motions to dismiss are premature. That is because "[r]es judicata is an affirmative defense[,] and the plaintiff need not plead around affirmative defenses" to state a claim. *Phillips v. Baxter*, No. 16-cv-08233, 2020 WL 2197842, at *3 (N.D. Ill. May 6, 2020). Still, because a plaintiff "may plead himself out of court by alleging (and thus admitting) the ingredients of a defense," res judicata "may properly be raised as a basis to dismiss a complaint pursuant to Rule 12(b)(6) where the instant complaint opens the door by referencing prior proceedings that form the basis for applying the doctrine." *Id.* (quotation marks omitted).

If Strickland's complaint "open[ed] the door" by referencing his state court lawsuit, the answer to the above question would be an easy yes. *Id.*; *see id.* at *4 (finding it "proper to consider the res judicata argument" raised in a motion to dismiss because the complaint "admit[ted] the details of" the relevant prior case). The complaint, however, makes no such reference. As far as the complaint is concerned, Strickland's federal case is his first and only proceeding against Mazziotta and the City. Accordingly, Strickland has not pled himself out of court by admitting "the ingredients of a [res judicata] defense," and it would be inappropriate to "dismiss [the] complaint pursuant to Rule 12(b)(6)" on res judicata grounds.[7] *Id.* at *3 (quotation marks omitted); *see, e.g.*, *Griggs v. Credit Acceptance Corp.*, No. 21-cv-00250, 2021 WL 5366040, at *2 (N.D. Ind. Nov. 17, 2021).

This might appear to end the inquiry. After all, it makes little sense to consider res judicata on a 12(b)(6) motion when that doctrine cannot serve as a basis for 12(b)(6) dismissal. But the Court has another option—namely, to "convert [each] motion to dismiss into a motion for summary judgment" and consider whether res judicata entitles the defendants "to judgment

---

[7] Similarly, it would be inappropriate to grant judgment on the pleadings on res judicata grounds. *See* Fed. R. Civ. P. 12(c); *Amari Co. v. Burgess*, 955 F. Supp. 2d 868, 877 (N.D. Ill. 2013) (Tharp, J.).

as a matter of law." *Cassady v. Quaker Oats Co.*, No. 02-cv-04550, 2002 WL 31557597, at *2 (N.D. Ill. Nov. 18, 2002); Fed. R. Civ. P. 56(a); *see id.* R. 12(d); *Amari Co. v. Burgess*, 955 F. Supp. 2d 868, 877-78 (N.D. Ill. 2013) (Tharp, J.). The Court selects this option (and finds consideration of res judicata appropriate) for two reasons. First, as discussed in section II.B below, the defendants' res judicata argument has merit.[8] Second, and largely because of the first, judicial economy favors resolution of the res judicata issue at the earliest opportunity.

A brief hypothetical illustrates the latter point. If the Court did not convert the defendants' motions into motions for summary judgment, it could not consider the defendants' res judicata argument. It would therefore need to weigh the remaining five arguments for dismissal and determine how to proceed. *See supra* note 6. But assuming the res judicata argument is a winning one, this would be an exercise in futility: Even if the case could move forward, the Court would eventually grant summary judgment to the defendants on res judicata grounds.[9] That is the same outcome conversion would have produced, meaning the Court could have saved time and effort by converting and granting summary judgment at the outset.[10]

The Court thus converts the defendants' motions to dismiss into motions for summary judgment pursuant to Fed. R. Civ. P. 12(d). The Court finds, for purposes of its conversion, that the parties have been "given a reasonable opportunity to present all the material . . . pertinent to" res judicata. Fed. R. Civ. P. 12(d). The defendants "made their record" by attaching "judicial

---

[8] To avoid redundancy, the Court does not address the substance of the defendants' argument in this section.

[9] Of course, it is possible that the defendants could (1) decline to move for summary judgment, or (2) abandon res judicata in their summary judgment briefing. Because the defendants have already raised the defense of res judicata, however, the Court does not view either possibility as particularly likely.

[10] That is to say nothing of the parties, who could have saved the time and effort associated with duplicative briefing and (depending on timing) discovery.

decisions and pleadings" to the 12(b)(6) motions, and Strickland had the chance to present additional evidence in his response.[11] *See Amari*, 955 F. Supp. 2d at 877 & n.4. In any event, the Court finds that "neither [side] will be prejudiced by this Court treating" the relevant motions as motions for summary judgment.[12] *Id.* at 877-78; *see, e.g.*, *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015); *Woods v. City of Chicago*, 234 F.3d 979, 991 (7th Cir. 2000). The res judicata issue is fully briefed and ripe for review, and the Court cannot imagine any new, disputed fact issue that would bear on its disposition.

**B.     Res Judicata**

Having determined that consideration of res judicata is appropriate, the Court proceeds to the merits of the defendants' res judicata argument. To obtain summary judgment based on res judicata, the defendants must show that, given the undisputed facts, Strickland's claims are precluded as a matter of law. Fed. R. Civ. P. 56(a).

The material facts here—namely, the existence of Strickland's state court suit and the contents of its filings—are not disputed. Nor could they be: Strickland's state court litigation is a matter of public record, and the authenticity of the relevant documents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Amari*, 955 F. Supp. 2d at 877 n.4. The question, then, is whether these facts legally preclude Strickland's claims. The Court answers in the affirmative.

---

[11]  The Court observes that, had it (1) notified the parties of its intent to convert, and (2) solicited additional evidence specific to the res judicata issue, it is not clear what new, relevant documents the parties would or could have produced.

[12]  True, Strickland's 12(b)(6) response is less "comprehensive" than the response at issue in *Amari*. *See* 955 F. Supp. 2d at 877 & n.4. But that is of no consequence, as Strickland could do little to contest the "record" of court filings assembled by the defendants. *See id.* at 877. Any shortcoming by the defendants, meanwhile, could "only work against them." *Id.* at 877 n.4.

Res judicata, or claim preclusion, "bars relitigation of claims that were or could have been asserted in an earlier proceeding." *D & K Props. Crystal Lake v. Mut. Life Ins. Co. of N.Y.*, 112 F.3d 257, 259 (7th Cir. 1997). The Court analyzes the preclusive effect of Strickland's state court case under Illinois law; if that law bars Strickland's current action, then summary judgment for the defendants is likely appropriate. *See Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1016 (7th Cir. 2014) (pursuant to 28 U.S.C. § 1738, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged" (quotation marks omitted)).

For a prior case to preclude a subsequent action in Illinois, "three prerequisites" must be met. *Id.* First, the prior case must involve "a final judgment on the merits rendered by a court of competent jurisdiction." *Id.* Second, there must be "an identity of the causes of action" between the two suits, assessed "by reference to the [so-called] transactional test." *Id.* (quotation marks omitted). Third, as between the two suits, there must be "an identity of parties or their privies." *Id.*; *see generally Cooney v. Rossiter*, 986 N.E.2d 618, 621-22 (Ill. 2012). The Court addresses each prerequisite in turn.

### 1.    Final Judgement on the Merits

The parties view the first prerequisite very differently. According to Strickland, "the state court never made a [final] judgment on the merits as the case was voluntarily dismissed." Resp. 1, ECF No. 33. The defendants, meanwhile, argue that the state court entered a final judgment on the merits when it granted Strickland's motion for voluntary dismissal. That is so, the defendants say, because (1) the "statute of limitations for challenging the Board's amended decision [had] already run" when the state court granted Strickland's motion, and (2) the grant thus "operate[d] as a dismissal with prejudice." Mazziotta Mot. to Dismiss Mem. 5, ECF No. 23; Reply 5, ECF

No. 34; *see Torres v. Rebarchak*, 814 F.2d 1219, 1223 (7th Cir. 1987) ("Illinois law is clear that a dismissal with prejudice is a final adjudication on the merits . . . .").

Neither side has it exactly right. It is true, as the defendants note, that the state court's order "did not [say] . . . the dismissal was without prejudice." Mazziotta Mot. to Dismiss Mem. 5. But a voluntary dismissal pursuant to 735 Ill. Comp. Stat. 5/2-1009 is "by its express terms[] without prejudice," as the statute permits dismissal of an action "without prejudice[] by order filed in the cause." *Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 14 (Ill. 2016); 735 Ill. Comp. Stat. 5/2-1009(a). The fact that the "statute of limitations for challenging the Board's amended decision [had] already run" does not change this analysis, as Strickland had up to a year after dismissal to refile his state court case under 735 Ill. Comp. Stat. 5/13-217.[13] Mazziotta Mot. to Dismiss Mem. 5. So the state court's grant of Strickland's motion did not, at least at the time of filing, operate as a dismissal with prejudice or a final judgment on the merits.[14]

Does that mean, as Strickland argues, there is no final judgment on the merits? Not quite. Even assuming "the state court never made a [final] judgment on the merits," the Board made such a judgment.[15] Resp. 1. The Supreme Court of Illinois has recognized that, when

---

[13] The effective version of that statute allows a plaintiff to "commence a new action within one year or within the remaining period of limitation, *whichever is greater*," following voluntary dismissal. *Hudson v. City of Chicago*, 889 N.E.2d 210, 214 & n.1 (Ill. 2008) (emphasis added) (quoting 735 Ill. Comp. Stat. 5/13-217 (1994)).

[14] It is possible that, after Strickland's year to refile expired in July 2023, the state court's dismissal transformed into a final judgment on the merits. *Cf. Taylor, Bean, & Whitaker Mortg. Corp. v. Cocroft*, 106 N.E.3d 379, 392-93 (Ill. App. Ct. 2018) (indicating that a voluntary dismissal might have preclusive effect after the time to refile expires). It certainly became "final" at that time. *Gassman v. Clerk of the Cir. Ct. of Cook Cnty.*, 126 N.E.3d 451, 456 (Ill. App. Ct. 2019). The Court is less certain that the dismissal became one "on the merits," although it need not resolve the issue given the discussion that follows.

[15] The Board is "a court of competent jurisdiction" for res judicata purposes, and neither side argues otherwise. *See Village of Bartonville v. Lopez*, 77 N.E.3d 639, 654-55 (Ill. 2017) (making this finding for a different board of fire and police commissioners); 65 Ill. Comp. Stat. 5/10-2.1-17.

administrative decisions (1) are made in proceedings "that are adjudicatory, judicial, or quasijudicial in nature," and (2) are not timely appealed, those decisions constitute final judgments on the merits and can have res judicata effect. *Village of Bartonville v. Lopez*, 77 N.E.3d 639, 655 (Ill. 2017) ("Following the hearing, the Board issued a decision. Defendants failed to seek judicial review of the Board's decision pursuant to the Administrative Review Law, so that decision became a final judgment on the merits."). Here, both criteria are met: The Board's administrative hearings were "judicial in nature" because they involved evidence, witnesses, and legal arguments, and Strickland declined to seek review of the Board's amended decision within the allotted 35 days. *See id.* (finding a hearing judicial under similar circumstances); 735 Ill. Comp. Stat. 5/3-103. Consequently, and regardless of the subsequent dismissal, the Board's amended decision is a final judgment on the merits for res judicata purposes.[16] The first prerequisite is met.

### 2. Identity of Causes of Action

The parties also view the second prerequisite very differently. Strickland argues that, because his state court case sought administrative review and his federal case alleges discrimination and retaliation, the two cases are "completely dissimilar" and lack "identity of the causes of action." *Walczak*, 739 F.3d at 1016; Resp. 12-13 ("The case Plaintiff previously pursued before the state court is simply a review of an administrative decision . . . . It is absurd to argue that the administrative case and Plaintiff's civil rights claims of discrimination and

---

[16] This makes good sense. If the Board's amended decision were not a final judgment on the merits simply because the state court dismissed without prejudice, Strickland's abandonment of his claims after an adverse judgment would carry no consequence and could result in the type of duplicative litigation res judicata aims to avoid. Although this is not a claim-splitting case, similar logic applies. *See Muhammad v. Oliver*, 547 F.3d 874, 876-77 (7th Cir. 2008) (citing *Hudson*, 889 N.E.2d at 217).

retaliation are identical in any regard . . . ."). The defendants, on the other hand, argue that the second prerequisite is met because Strickland's suits satisfy the transactional test.

The defendants have the better of the argument. Recall that Illinois courts assess the second prerequisite by reference to the transactional test; under that test, two suits have "an identity of the causes of action . . . if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Walczak*, 739 F.3d at 1016-17 (quotation marks omitted). This "pragmatic" standard resolves the parties' dispute. *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 637 (7th Cir. 2004). Strickland is correct that his two cases concern different legal theories: the propriety of Strickland's conduct and the Board's decision on the one hand, and discrimination and retaliation under Title VII, § 1983, and the Ethics Act on the other. But that is unimportant, as the two cases arise from identical facts concerning Strickland's termination.[17] As the Seventh Circuit wrote in *Welch v. Johnson*, a case nearly identical to this one:

> [T]he facts [in the state and federal cases] are merely different factual sides of the same coin. Ms. Welch argues that these facts occurred for one reason (a discriminatory motive); the defendants argue that the same facts occurred for a different reason (just cause to dismiss Ms. Welch). The single factual situation out of which both suits arise is [the employer's] conduct toward Ms. Welch that eventually culminated in [a] discharge. This conduct and the reasons underlying that conduct are relevant as either part of a claim or a defense in both the state and federal claims . . . .

907 F.2d 714, 722 (7th Cir. 1990) (emphasis omitted) (finding the transactional test satisfied); *see id.* at 716-17. Substituting "Mr. Strickland" for "Ms. Welch" demonstrates that the second prerequisite, too, is met.[18]

---

[17] Indeed, the events discussed in the Board's amended decision—the arson investigation and Strickland's COVID diagnosis—feature prominently in Strickland's complaint.

[18] The "two sides of the same coin" language also applies to those events—shift changes, the FMLA investigation, and so on—not explicitly discussed by the Board. Even if Strickland

### 3.     Identity of Parties

The parties do not dispute that the third prerequisite is met. That is probably wise, as Strickland's state and federal actions clearly have an identity of parties. Strickland's state court suit was against Mazziotta, the Board, and the City; his federal suit is against Mazziotta and the City. Although the Board is not a named defendant in Strickland's federal suit, that does not matter for res judicata purposes: "[W]here the plaintiff is the same in both actions and the defendants in the second suit are also included among the defendants in the prior suit," the common defendants may assert an identity of parties "although there are additional parties . . . in the prior action." *Tambone v. Simpson*, 414 N.E.2d 533, 536 (Ill. App. Ct. 1980). A litigant, in other words, may not circumvent the same-parties rule "merely by adding new defendants to or subtracting old ones from a prior action when instituting a second suit." *Id.*; *see also, e.g.*, *Kapoor v. Fujisawa Pharm. Co.*, 699 N.E.2d 1095, 1100 (Ill. App. Ct. 1998) ("The 'same parties' requirement is satisfied where the litigants' interests are sufficiently similar, even if the litigants differ in name or number.").

### 4.     Full and Fair Opportunity to Litigate

All three prerequisites are therefore met. But the Court's job is not quite done: It must also ask, pursuant to Illinois law and federal due process, whether Strickland "had a full and fair opportunity in the state proceedings to litigate the claims" to be precluded. *Welch*, 907 F.2d at 719, 723 & n.9. The Seventh Circuit's *Welch* decision, discussed briefly above, makes this inquiry straightforward. In *Welch*, the plaintiff filed two lawsuits regarding the termination of her employment: one (in state court) seeking review of the relevant administrative decision, and another (in federal court) alleging discrimination and retaliation in violation of Title VII and

---

did not bring those events to the Board's attention, they all relate to the Department's behavior in the lead-up to Strickland being fired.

§ 1983. *Id.* at 716-17. The Seventh Circuit found that, because the administrative body could have entertained the plaintiff's Title VII and § 1983 claims "in defense of the discharge procedure," the plaintiff had a full and fair opportunity to litigate those claims in state court. *Id.* at 723-26; *Abner v. Ill. Dep't of Transp.*, 674 F.3d 716, 720 (7th Cir. 2012). The state circuit court, the Seventh Circuit added, could also have heard the claims on appeal. *See Welch*, 907 F.2d at 725-26.

So too here. The Board, like the administrative body in *Welch*, could have entertained Strickland's Title VII, § 1983, and Ethics Act claims as defenses in its termination proceedings. *Pirela v. Village of North Aurora*, 935 F.2d 909, 913-15 (7th Cir. 1991). And in any event, Strickland could have joined those claims with his administrative appeal of the Board's decision. *See id.* at 913 ("[T]he states and federal government share concurrent jurisdiction over Title VII claims."); *Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001) ("Illinois allows a plaintiff to join constitutional claims under § 1983 with a request for administrative review."); 5 Ill. Comp. Stat. 430/15-25 ("The circuit courts of this State shall have jurisdiction to hear [Ethics Act] cases . . . ."). Strickland thus had a full and fair opportunity to litigate the claims presented here in state court. That he declined to do so "does not insulate [his] claims from the effects of res judicata." *Welch*, 907 F.2d at 725; *see Walczak*, 739 F.3d at 1017 ("Claim preclusion applies not only to matters that were actually decided in the original action[,] but also matters that could have been decided."); *Abner*, 674 F.3d at 720-21 (citing similar cases).

At least the Board's decision was a final judgment on the merits; Strickland's state and federal cases arise from the same operative facts and involve the same parties; and Strickland could have litigated the claims he raises here in state court. This suit is therefore barred in its

entirety by Illinois and federal law. Far from "ridiculous," Resp. 10, the defendants' res judicata argument carries the day.

## III.    CONCLUSION

For the foregoing reasons, the Court finds that (1) all of Strickland's claims in this action are precluded, and (2) the undisputed facts entitle the defendants to judgment as a matter of law. The defendants' converted motions for summary judgment are granted.

Date: November 18, 2024

John J. Tharp, Jr.
United States District Judge

14